UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MERRIT DEMON McCRAY,

       Petitioner,

v.                                   CASE No. 08-CV-12033
                                   HON. AVERN COHN

THOMAS BIRKETT,

       Respondent.

_____/

## MEMORANDUM AND ORDER
## DENYING PETITION FOR A WRIT OF HABEAS CORPUS
## AND
## DENYING A CERTIFICATE OF APPEALABILITY

### I. Introduction

This is a habeas case under 28 U.S.C. § 2254. Michigan prisoner Merrit Demon McCray ("Petitioner") was convicted of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, and carrying a weapon with unlawful intent, Mich. Comp. Laws § 750.226, following a jury trial in the Bay County Circuit Court in 2005. He was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of 10 to 30 years imprisonment.

Petitioner raises claims regarding: (1) the jury selection process, (2) the lack of victim testimony, (3) the admission of identification testimony and the photographic lineup, (4) the denial of a witness identification expert, and (5) the validity of his sentence. For the reasons that follow, Petitioner is not entitled to habeas relief on any of his claims. Petitioner is also not entitled to a certificate of appealability.

## II. Background

Petitioner's convictions arise from his assault upon Antoine Kilgore at a bar in Bay City, Michigan on October 25, 2003. The trial testimony revealed that Kilgore was struck repeatedly from behind with a pool cue. Witnesses reported that the assailant entered the bar through the back door, grabbed a pool cue from near the back of the bar, walked to where the victim was standing, and hit the victim several times with the pool cue before fleeing the bar.

Kilgore suffered life threatening injuries, including bruising to his brain and lacerations to his head. His skull was fractured, and he required surgery to remove a blood clot on the right side of his brain. When Kilgore was initially examined, he was awake but confused. He was unable to speak clearly and was partially paralyzed on the right side of his body. Testimony at trial indicated that he would likely suffer permanent injuries. Kilgore did not testify at trial, but the jury was told that he could not identify his assailant.

Tara Gonzales, a bar patron, described the assailant to the police that night. She told them she recognized the assailant but did not know his name. The police later showed her a photographic lineup containing Petitioner's photograph, and she identified Petitioner as the assailant. Gonzales testified that she was under the impression that the assailant's photograph would be present in the lineup.

Micah Burns, another bar patron, also witnessed the incident. He identified Petitioner as the assailant at trial. When asked how he knew Petitioner, Burns said, "we were all friends, acquaintances . . . and hung out at the bar together." Burns also stated that Petitioner had been to his home.

Bartender Angie Liphard was working that evening and stated that she was behind the bar counter when the assailant entered the bar and attacked Kilgore. She "didn't really get a good look at the assailant," but described him as a black man wearing blue jeans and a blue shirt.

Corey Brown was outside the bar shortly before the incident and saw Petitioner enter the bar from the corner of his eye. Brown noted that he only saw Petitioner "[f]or a quick second." About five minutes later, Brown entered the bar and discovered that Kilgore had been assaulted.

Tara Gonzales and Angie Liphard spoke with the police at the bar the night of the attack. Micah Burns and Corey Brown left the bar without speaking to the police, but later came forward as witnesses.

Petitioner did not testify at trial. At the close of trial, the jury found him guilty of assault with intent to do great bodily harm less than murder, carrying a weapon with unlawful intent, and felonious assault. The trial court vacated the felonious assault conviction on double jeopardy grounds and, as noted above, sentenced Petitioner as a fourth habitual offender to concurrent terms of 10 to 30 years imprisonment on the remaining convictions.

Petitioner filed an appeal as of right with the Michigan Court of Appeals asserting several claims, including those raised in his habeas petition. The Michigan Court of Appeals affirmed his convictions. People v. McCray, No. 261851, 2006 WL 3332925 (Mich. Ct. App. Nov. 16, 2006) (unpublished). The Michigan Supreme Court denied leave to appeal. People v. McCray, 729 N.W.2d 866 (Mich. 2007).

Petitioner thereafter filed the present federal habeas petition, raising the following

claims:

I.   The trial court erred by using the struck-jury method for jury selection.

II.  His Sixth Amendment confrontation clause rights were violated because the victim did not testify at trial.

III. The trial court failed to suppress an in-court identification that was influenced by an unduly suggestive photographic lineup.

IV.  The trial court failed to grant him an eyewitness identification expert, and did not conduct a hearing to determine if such an expert was appropriate.

V.   He was sentenced in violation of his Sixth and Fourteenth Amendment rights to have a jury determine the facts for sentencing.

Respondent has filed an answer to the petition, asserting that it should be denied because the claims are not cognizable, lack merit, and/or are barred by procedural default.

### III.  Standard of Review

28 U.S.C. § 2254 provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

4

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413) "In order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" Wiggins, 539 U.S. at 520-21 (citations omitted); see also Williams, 529 U.S. at 409. Section 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). While the requirements of "clearly established law" are to be determined solely by the Supreme Court's holdings, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. See Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, the Court must presume that state court factual determinations are correct. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. See Warren v. Smith, 161 F.3d 358, 360-61

(6th Cir. 1998).

## III.  Discussion

### A.  Jury Selection Claim

Petitioner first says that he is entitled to habeas relief because the trial court used the "struck jury" method of jury selection at trial in violation of his state and federal constitutional rights.  Under the struck jury method, challenges for cause are made until a sufficiently large panel of qualified jurors remains to fill the juror and alternate juror positions should all peremptory challenges be exercised, then the parties' peremptory challenges are exhausted.  From the remaining jurors, the first 14 in order of seating comprise the final jury.  Under the "jury box" method, 14 people fill the jury box, the parties then exercise their challenges for cause and peremptory challenges one juror at a time.  As a juror is excused, that seat is filled and challenges continue until the parties express satisfaction with the jury or no challenges remain.  See, e.g., United States v. Delgado, 350 F.3d 520, 523 n. 1 (6th Cir. 2003) (describing both methods); People v. Miller, 307 N.W.2d 335, 336 (Mich. 1981) (describing the struck jury method and finding it improper under state law).  Respondent contends that this claim is barred by procedural default, is not cognizable upon habeas review, and lacks merit.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  See Wainwright v. Sykes, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  White v. Mitchell, 431 F.3d 517, 524 (6th Cir. 2006).  "A procedural

6

default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263-64 (1989). The last explained state court judgment should be used to make this determination. Ylst v. Nunnemaker, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. Id.

Here, the Michigan Court of Appeals rendered the last reasoned opinion. In denying relief on this claim, the court relied upon a state procedural bar – Petitioner's failure to properly preserve the issue. The court of appeals then reviewed the issue for plain error affecting Petitioner's substantial rights and found that the trial court did not use the struck jury method and that "the jury selection process was in compliance with the court rule and constituted a fair and impartial means of selecting a jury." McCray, 2006 WL 3332925 at *1.

The failure to make a contemporaneous request or objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. See Coleman v. Thompson, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits. See Paprocki v. Foltz, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. See Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001). The Michigan Court of Appeals denied this claim based upon Petitioner's failure to preserve the issue and as such, the claim is defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. See Coleman, 501 U.S. at 753; Gravley v. Mills, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse this procedural default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. See Smith v. Murray, 477 U.S. 527, 533 (1986); Long v. McKeen, 722 F.2d 286, 289 (6th Cir. 1983). Petitioner has therefore not overcome his default.

Nonetheless, the Court notes that Petitioner cannot demonstrate prejudice because the claim lacks merit. First, to the extent that Petitioner asserts that the jury selection process violated Michigan law, he is not entitled to relief. A federal habeas court's review is limited to violations of federal law. See Smith v. Phillips, 455 U.S. 209, 221 (1982). Errors of state law are not cognizable on habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citations omitted). Moreover, Petitioner has not shown that the jury selection process violated Michigan law. In fact, his claim is belied by the record. The record indicates that, although the trial court referred to the struck jury method before trial, it did not utilize such a method to select the jury. Rather, the trial court first seated 14 potential jurors (12 jurors and 2 alternates), then when a juror was excused for cause or peremptorily, another juror was seated and questioned before further challenges were exercised. The Michigan Court of Appeals concluded that the struck jury method was not used and that the jury selection process complied with the state court rule. State courts are the final arbiters of state law and the federal

courts will not intervene in such matters.  See, e.g., Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Oviedo v. Jago, 809 F.2d 326, 328 (6th Cir. 1987).

Second, Petitioner has not shown that the jury selection process violated federal law.  "The Sixth and Fourteenth Amendments guarantee a criminal defendant an impartial jury in state court." Mahdi v. Bagley, 522 F.3d 631, 636 (6th Cir. 2008) (citing Ristaino v. Ross, 424 U.S. 589, 595 n. 6 (1976); Irvin v. Dowd, 366 U.S. 717, 722 (1961)).  Petitioner, however, has not shown that the jury selection process was unconstitutional.  The United States Supreme Court has never held the struck jury method to be unconstitutional.  See J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 144 n. 17 (1994) (noting that Alabama may use the struck jury system so long as its actual use complies with the Constitution); Amsler v. United States, 381 F.2d 37, 44 (9th Cir. 1967) (upholding Arizona's jury selection system, which is similar to the struck jury method).  Moreover, as discussed above, the trial court did not actually employ the struck jury method at trial.  Petitioner has not shown that the trial court's jury selection process was improper or that it violated his federal constitutional rights.  He has thus failed to establish prejudice to excuse his procedural default.

Finally, Petitioner has not established that a fundamental miscarriage of justice has occurred.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  See Schlup v. Delo, 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." <u>Schlup</u>, 513 U.S. at 324. Petitioner has made no such showing.

Overall, this claim is barred by procedural default and Petitioner has failed to overcome the default.

### B. Confrontation Claim

Petitioner next says that he is entitled to habeas relief because the victim, Antoine Kilgore, did not testify at trial. Petitioner claims that this omission violated his rights under the Confrontation Clause. The Michigan Court of Appeals denied relief on this claim, finding that Petitioner had agreed that the victim did not need to participate. <u>McCray</u>, 2006 WL 3332925 at *2. The court of appeals also determined that Petitioner's confrontation rights were not violated because the prosecution did not present the victim's testimony or statements at trial. <u>Id</u>.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him. In <u>Crawford v. Washington</u>, 541 U.S. 36, 54 (2004), the United States Supreme Court held that the testimonial statement of a witness who does not appear at trial is inadmissible unless the witness is unavailable to testify and the defendant has had a prior opportunity to cross-examine the witness. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." <u>Davis v. Alaska</u>, 415 U.S. 308, 315 (1973). For this reason, the prosecution in a criminal trial must make a good faith effort to produce relevant

witnesses at trial.  See, e.g., Barber v. Page, 390 U.S. 719, 724-25 (1968).  The failure

to produce a relevant witness only serves as a basis for habeas corpus relief if, under

federal constitutional law, the petitioner is denied a fundamentally fair trial.

Here, during jury selection, the prosecutor informed the jury that the victim

would not be testifying at trial.  He explained that Kilgore was currently living in

California and "the parties ha[d] agreed that he need not participate."  Tr. Jan. 12,

2005, at 54.  Petitioner states that neither he nor his counsel affirmed this statement on

the record.  However, neither Petitioner nor his counsel contradicted the prosecutor's

statement, and there is no evidence in the record that Petitioner or his counsel

objected to the victim's absence at the time of trial.  It was thus reasonable for the

Michigan Court of Appeals to conclude that the parties had agreed that Kilgore need

not testify and to deny relief on this claim.

Petitioner cites two federal cases for the proposition that it is impermissible for a

court to require a criminal defendant to call the victim to the stand in order to exercise

his confrontation rights.  See Lowery v. Collins, 988 F.2d 1364, 1369 (5th Cir. 1993)

(holding that a defendant's confrontation rights were violated when the victim's

statements were admitted but the victim did not testify); see also Shaw v. Collins, 5

F.3d 128 (5th Cir. 1993) (same).  In both of those cases, however, the defendant's

confrontation rights were violated, not because the victim did not testify, but because

the victim's prior out-of-court statements were admitted into evidence without an

opportunity for cross-examination.  In this case, none of the victim's statements,

testimonial or otherwise, were offered at trial.  Because Kilgore's statements were not

admitted, Petitioner had no right to confront him and the prosecution was not required

to call him as a witness.  Petitioner's confrontation rights were not violated.

Petitioner has also failed to show that the prosecution's decision not to call the victim as a witness was prejudicial or rendered his trial fundamentally unfair.  First, the jury was well aware that Kilgore could not identify the assailant.  During jury selection, when some jurors indicated that they might hold the victim's absence against the prosecution, the court informed the jury that the victim could not identify the assailant.  Tr. Jan 12, 2005 at 58.  Second, Petitioner has not indicated how Kilgore's appearance would have benefitted his case.  Given that Kilgore was struck from behind and could not identify his assailant, it is unlikely that Kilgore's testimony would have affected the jury's decision.  Petitioner has failed to establish that Kilgore's absence rendered his trial fundamentally unfair.

Moreover, even if a constitutional violation occurred, Petitioner is still not entitled to relief from this Court.  For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  Harmless error analysis applies to Confrontation Clause errors.  See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

Here, the prosecution presented ample evidence for the jury to find Petitioner guilty beyond a reasonable doubt, even without the victim's testimony.  Three witnesses identified Petitioner as the assailant and another placed him at the scene of the crime.  Tara Gonzales, Micah Burns, and Corey Brown were all familiar with Petitioner before the assault occurred.  Micah Burns was a friend of Petitioner's and stated that Petitioner had been to his home. Corey Brown was a friend of Petitioner's

12

stepbrother. The witness testimony provided significant evidence of Petitioner's guilt.

Petitioner has also not shown that the victim's testimony was so crucial or beneficial to his defense that its omission had a substantial or injurious influence or effect on the verdict. Petitioner claims that the victim would have testified that he was not the assailant. Petitioner has offered no such evidence. Additionally, the record reveals that the victim could not identify his assailant because he was struck from behind – and the jury was aware of this fact. Petitioner also claims that Kilgore's testimony could have established a motive for the attack (presumably by another person). This claim is again conclusory and speculative at best. Moreover, the prosecution was not required to prove the assailant's motive to establish the elements of the crime or to satisfy the burden of proof. The Court is confident that any error arising from the absence of the victim's testimony was harmless beyond a reasonable doubt. Habeas relief is not warranted on this claim.

### C. Identification Claim

Petitioner next says that he is entitled to habeas relief because the trial court failed to suppress Tara Gonzales' in-court identification testimony. He says that her identification was influenced by an unduly suggestive photographic lineup. Petitioner asserts that the photographic lineup was unduly suggestive because Detective Vosler gave Gonzales the impression that the assailant's picture would be included in the lineup. He also asserts that the photographic lineup was improper because the other men did not sufficiently resemble him and did not reflect Gonzales' description of the assailant. Respondent contends that this claim lacks merit.

A conviction based on identification testimony following a pre-trial identification

violates due process when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). If a witness is shown an unduly suggestive photographic lineup, the witness's in-court identification of the accused must be suppressed unless the identification has an independent origin untainted by the suggestive lineup. See United States v. Wade, 388 U.S. 218, 241 (1967).

The Sixth Circuit follows a two-step analysis in determining whether an identification is admissible. See United States v. Crozier, 259 F.3d 503, 510 (6th Cir. 2001) (citing Ledbetter v. Edwards, 35 F.3d 1062, 1070 (6th Cir. 1994)). A court must first determine whether the identification procedure was suggestive. Id. If the court finds that the procedure was suggestive, then it must determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible. Id. To determine reliability, the court weighs five factors: "(1) the opportunity of the witness to view the perpetrator during the crime; (2) the witness's degree of attention to the perpetrator; (3) the accuracy of the witness's prior descriptions of the perpetrator; (4) the level of certainty demonstrated by the witness when identifying the suspect; and (5) the length of time between the crime and the identification." Id. (citing Neil v. Biggers, 409 U.S. 188, 199 200 (1972)). "'Against these factors is to be weighed the corrupting effect of the suggestive identification itself.'" Id. (quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)).

Here, the Michigan Court of Appeals addressed this issue and ruled that Gonzales' identification was not tainted by improper police behavior. After reviewing

14

the photographic lineup, the court of appeals also determined that "the other individuals in the lineup have characteristics similar to defendant's characteristics," and that "[t]here is nothing that makes defendant's photo stand out from the others." McCray, 2006 WL 3332925 at *2. The court of appeals concluded that the lineup was not unduly suggestive.

The court of appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, the record does not support Petitioner's assertion that Detective Vosler told Gonzales that the assailant's photograph would be in the array. While Gonzales testified that she was under the impression that the assailant's photographic would be in the lineup, she did not say that this impression came from Detective Vosler. Rather, Gonzales' testimony indicates that she believed the assailant's photograph would be included in the lineup because she saw Petitioner's photograph in Detective Vosler's hand before he showed her the array. Furthermore, common sense dictates that most witnesses would anticipate that a photographic lineup would include the suspect's photograph. Petitioner has not shown that the pre-trial identification procedure was unduly suggestive.

Second, Petitioner has not shown that the photographic lineup was improper due to a disparity of appearances or a deviation from Gonzales' description. The testimony at the state court suppression hearing reveals that the array consisted of quality color photographs. The trial court found no significant age differences among the men. Petitioner was bald and several photographs contained bald or balding men. While Petitioner did not have facial hair at the time of the hearing, he had facial hair in his photograph and the men featured in the array all had facial hair. From this record,

15

the Court finds that the photographic lineup was fairly representative of Petitioner.

Lastly, Petitioner has not shown that Gonzales's in-court identification was unreliable. Gonzales expressed an independent basis for her identification of Petitioner as the assailant – her recollection of the incident. Gonzales testified that she could see the victim and the area of the assault from her seat six feet away and described the bar as fairly well-lit. She heard the back door to the bar open and looked to see who entered. When she heard a disturbance, she saw the assailant hit the victim several times, turn, and run out of the back door. Gonzales had seen the assailant in the bar on several occasions before the incident.

When police arrived at the scene, Gonzales described the assailant and told an officer that she recognized him, but not know his name. Shortly after the incident, she learned Petitioner's name and saw him again. Gonzales contacted Detective Vosler and gave him this information. She then participated in the photographic lineup and identified Petitioner as the assailant. Although Gonzales' description of the assailant was not perfectly in line with Petitioner's appearance, she was always certain in her identification. She knew Petitioner before the assault and described him as someone she would recognize on sight. Given such circumstances, it cannot be said that Gonzales' in-court identification was unreliable or that its admission violated Petitioner's constitutional rights. Habeas relief is not warranted on this claim.

### D. Expert Witness Claim

Petitioner next says that the trial court should have granted him a court-appointed expert witness to testify about inaccuracies in witness identification and/or that the court should have conducted a hearing to determine the need for such

16

an expert. The Michigan Court of Appeals denied relief on this claim, holding that a defendant is not entitled to a court appointed expert witness unless "he 'cannot safely proceed to a trial' without the expert's assistance" and finding no such need in Petitioner's case. McCray, 2006 WL 3332925 at *3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Petitioner has not identified a clearly established federal law entitling him to an witness identification expert. The only case arguably on point is Ake v. Oklahoma, 470 U.S. 77 (1985). The United States Supreme Court's holding in Ake, however, was limited:

> We therefore hold that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.

Id. at 83. The United States Supreme Court did not discuss a defendant's entitlement to court-appointed experts outside the context of an insanity defense. Subsequent to Ake, the United States Supreme Court has explicitly declined to answer this question. See Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985).

In light of the language of Ake and the Court's reservation in Caldwell, there is disagreement over whether Ake requires the provision of expert services beyond psychiatric services necessary to present an insanity defense. Cf. Terry v. Rees, 985 F.2d 283, 284 (6th Cir. 1993) (petitioner denied opportunity to present an effective defense by failure to appoint independent pathologist); McKenzie v. Jones, 100 Fed. Appx. 362, 364-65 (6th Cir. 2004) (petitioner has no constitutional right to the

appointment of an expert of his personal liking or to receive funds to hire his own);

*Conklin v. Schofield,* 366 F.3d 1191, 1206 (11th Cir. 2004) (noting that the Supreme

Court has not extended <u>Ake</u> to non-psychiatric experts); <u>Brewer v. Cason</u>, No.

1:05-CV-118, 2006 WL 3103212, *12-13 (W.D. Mich. Oct. 31, 2006) (same); <u>Fitzpatrick</u>

<u>v. Renico</u>, No. 05-CV-70107, 2006 WL 2069514, *10-12 (E.D. Mich. July 26, 2006)

(citing <u>Ake</u> and stating that the Supreme Court "has never extended the state's

obligation to provide expert assistance beyond psychiatric examination").

On habeas review, however, the question is not whether this Court, or the

United States Court of Appeals for the Sixth Circuit, would extend <u>Ake</u> to require the

provision of non-psychiatric experts. Rather, the question is whether <u>Ake</u> clearly

establishes Petitioner's right to the appointment of an identification expert. In

pre-AEDPA cases, courts have held that extending <u>Ake</u> to non-psychiatric experts

would amount to a "new rule" of constitutional law which could not be applied on

collateral review under the Supreme Court's decision in <u>Teague v. Lane</u>, 489 U.S. 288

(1989). The <u>Teague</u> rule is "the functional equivalent" of the clearly established law

requirement of § 2254(d)(1), and, thus, a rule which fails to satisfy <u>Teague</u> also fails to

satisfy § 2254(d)(1). <u>See</u> <u>Williams</u>, 529 U.S. at 380 (opinion of Stevens, J.); *id.* at 412

(opinion of O'Connor, J., for the Court); <u>see</u> <u>generally</u> <u>Williams v. Cain</u>, 229 F.3d 468,

474-75 (5th Cir. 2000) (discussing relationship between <u>Teague</u> and § 2254(d)(1)).

Thus, Petitioner's asserted right to the appointment of a witness identification expert

(i.e, a non-psychiatric expert) was not clearly established law under § 2254(d)(1) at the

time of his convictions. Petitioner is therefore not entitled to relief on this claim.

Furthermore, Petitioner has not established that the trial court's refusal to

appoint an expert deprived him of a substantial defense or otherwise rendered his criminal proceedings fundamentally unfair. While the right of an accused to present a defense has long been recognized as "a fundamental element of due process," Washington v. State, 388 U.S. 14, 19 (1967), "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." United States v. Scheffer, 523 U.S. 303, 308 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." Id. (internal quotations omitted). Petitioner has not shown how the appointment of a witness identification expert would have aided his defense. Moreover, several witnesses who knew Petitioner prior to the assault identified him as the assailant. Micah Burns was Petitioner's friend at the bar and Petitioner had been to his home. Corey Brown was a friend of Petitioner's stepbrother. An expert in witness identification was unnecessary given that the witnesses were familiar with Petitioner before the crime. Petitioner has failed to establish that he was prejudiced by the trial court's refusal to appoint an expert in witness identification. Habeas relief is not warranted on this claim.

### E. Sentencing Claim

Lastly, Petitioner says that he is entitled to habeas relief because the trial court violated his Sixth Amendment right to a jury trial in imposing his sentence. He claims that the court relied upon facts that were not determined by a jury in imposing his sentence. In Apprendi v. New Jersey, 530 U.S. 466, 530 (2000), the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

19

submitted to a jury, and proved beyond a reasonable doubt." In <u>Blakely v. Washington</u>, 542 U.S. 296, 303-04 (2004), the Supreme Court, applying <u>Apprendi</u> to a state sentencing guideline scheme under which the maximum penalty could be increased by judicial fact-finding, held that the state guideline scheme violated a defendant's Sixth Amendment rights, and reiterated that any fact that increased the maximum sentence must be admitted by the defendant or proven to a jury beyond a reasonable doubt. <u>See also</u> <u>United States v. Booker</u>, 543 U.S. 220, 232 (2005).

The Michigan Court of Appeals denied relief on this claim on the grounds that <u>Blakely</u> does "not apply to Michigan's indeterminate sentencing scheme as long as a defendant is not sentenced beyond the statutory maximum." <u>McCray</u>, 2006 WL 3332925 at *3. This decision is neither contrary to, nor an unreasonable application of, Supreme Court precedent. The <u>Blakely</u> line of cases does not apply to Michigan's intermediate sentencing scheme. In Michigan, the maximum sentence is established by statute and cannot be varied by the sentencing judge; the judge's only discretion is in setting the minimum sentence. Petitioner's sentence was within the statutory maximum. No <u>Blakely</u> violation occurred. Habeas relief is therefore not warranted on this claim.

## IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability ("COA") must issue.[1] 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only

_____

[1]Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. Id. at 336-37. When a district court denies a habeas claim on procedural grounds without addressing the merits, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. See Slack, 529 U.S. at 484-85.

The Court finds that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims and that jurists of reason would not find the Court's procedural ruling (as to his first claim) debatable.

### V. Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on any of his claims. Accordingly, the petition is DENIED. A COA is also DENIED.

SO ORDERED.

Dated: April 19, 2010          S/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was mailed to Merritt Demon McCrary, 258101, Standish Maximum Correctional Facility, 4713 West M-61 Standish, MI 48658  and the attorneys of record on this date, April 19, 2010, by electronic and/or ordinary mail.


 S/Julie Owens _____
 Case Manager, (313) 234-5160